HARRY A. EGGLESTON, Appellee, v. MRS. T. F. EGGLESTON, Appellant.

No. 44409.

October 25, 1938.

Rehearing Denied February 10, 1939.

David L. Loepp,. for appellee.

Kass & Kass, Fred H. Free, Carlos W. Goltz, and R. A. Oliver, for appellant.

Stiger, J.—Plaintiff brought this action against his mother, Mrs. T. F. Eggleston, for dissolution of a partnership and for an accounting. Plaintiff alleged in his petition that in May, 1920, he entered into an oral partnership agreement with his father, T. F. Eggleston, and that they carried on the partnership under the name of Guarantee Construction Company; that in 1921, the partnership purchased a lumber yard which it operated under the name of Builders Lumber and Mill Company; that plaintiff and his father continued to operate the construction company, doing a general contracting business in Sioux City and vicinity, and the lumber yard until the death of his father in May, 1923; that T. F. Eggleston left a will naming his wife, the defendant, his sole beneficiary which was admitted to probate; that after the death of his father, the defendant, as sole beneficiary under the will and the · plaintiff operated the partnership business in the same manner it was conducted before the death of Mr. Eggleston under the name of Guarantee Construction Company until 1926 when the lumber yard was sold; that the defendant retained the proceeds of said sale in the sum of $49,000 under an agreement that plaintiff was to continue in the active operation of the construction company and that the defendant would use the money as the same was needed in the business; that defendant has refused to recognize

the plaintiff as a partner and refused to render an accounting or make any settlement with plaintiff and retains all of the property of the partnership as sole owner. Plaintiff prays for a dissolution of the partnership and for an accounting.

The defendant filed an answer alleging that she was sole beneficiary under the will of T. F. Eggleston; that in the estate proceedings she claimed an undivided one-half interest in the property of the deceased; that the plaintiff did not make any claim to the property of T. F. Eggleston, deceased, during the period of the probate proceedings nor at any time thereafter until the filing of this suit but remained silent and acquiesced in the closing of the estate; that by reason of plaintiff's failure to file a claim in the probate proceedings, he is estopped from claiming any share in the property of T. F. Eggleston or against this defendant by virtue of an alleged partnership with T. F. Eggleston; that the order approving defendant's final report and discharging her as executrix was a complete adjudication of the rights of the parties with respect to the assets of the estate; that though the defendant was discharged and the estate closed in 1926, the plaintiff made no claim against the defendant for more than seven years but acquiesced in the ownership, possession and control of the defendant in the assets set over to the defendant by the final order in the probate proceedings.

Plaintiff's contention is that he and his father were the sole members of the partnership and that defendant had no interest therein, while it is the contention of the defendant that she and her husband were sole members of the partnership and that plaintiff was a mere employee working for wages.

The court found that the partnership consisted of T. F. Eggleston, the plaintiff and defendant and entered a decree adjudging that each of said persons were the owners of an undivided one-third interest in the partnership property at the time of the death of T. F. Eggleston and found defendant liable to the plaintiff for such undivided interest, and ordered defendant to account to the plaintiff and sustained plaintiff's motion for a reference. Neither plaintiff nor defendant was satisfied with the decree and each appealed.

The plaintiff introduced convincing evidence that he was a partner with his father. In a financial statement given by the Guarantee Construction Company to the First Trust and Savings Bank of Sioux City, dated May 20, 1920, executed by T. F.

Eggleston, Mr. Eggleston stated the company was a partnership consisting of Harry A. Eggleston, the plaintiff, and T. F. Eggleston. The statement named the defendant as beneficiary of his life insurance. In an application of the construction company for a contract bond, dated in 1920, also executed by T. F. Eggleston, he stated the partnership consisted of T. F. Eggleston, Mrs. T. F. Eggleston and Harry A. Eggleston. Plaintiff signed notes of the construction company, drew partnership checks, signed proposals and bids of the company for construction of buildings and he and his father signed identification cards at the bank at which the company transacted its business which authorized them to sign and indorse for the construction company.

K. B. White, who had been engaged in the building and construction business in Sioux City for 15 years and who was acquainted with T. F. Eggleston, testified with reference to a conversation he had with Mr. Eggleston about a new school building the construction company had bid on testified that ''Mr. Eggleston told me that his son, Harry, had estimated the job. Said he didn't do any of the work at all. He told me he would put his son against any estimator in Sioux City and that he had taken Harry in as a partner''. The witness further testified that he bought material from the lumber yard and that most of his relations were with the plaintiffs; that from his experience with Harry Eggleston he would say he was a very competent estimator.

J. J. Keefe, who had been in the contracting and construction business in Sioux City for 35 years, testified that he had been acquainted with the plaintiff and his father since 1918; that when they moved from Cedar Rapids to Sioux City Mr. Eggleston was very sick and not able to do much work; that he told the witness that as soon as Harry finished a Cedar Rapids job he would come to Sioux City and take charge of the work; that Harry was doing most of the estimating. The witness testified: ''I asked T. F. Eggleston who was doing his estimating and how he was going to carry on? He was a very sick man when I asked him and he said his son was a partner and would take charge of the work and that would relieve him; that he and Harry were sole partners''.

Carl Schroeder, an employee of the Builders Lumber and Mill Company, testified that he was employed by the plaintiff; that plaintiff was in charge of the lumber company; that before

anything was sold out of the yard the price quoted was first approved by the plaintiff.

James E. Risden testified that he had been acquainted with the plaintiff and his father for many years; that in 1922, T. F. Eggleston told him he had made Harry a full partner in the business.

After the death of T. F. Eggleston plaintiff and defendant continued in possession of the partnership property until 1926 when the lumber yard was sold for $49,000. Defendant executed the conveyance and the proceeds were paid to her which she retained as sole owner of the property after the death of her husband. Plaintiff claims that he negotiated the sale and that defendant retained the proceeds under an agreement to use the money as needed in carrying on the construction work.

From May, 1920, the date plaintiff claims he went into partnership with his father, he received only his ordinary living expenses leaving the remainder of his share of the proceeds in the business at all times. He exercised a substantial control over the partnership affairs.

■ We have considered the evidence introduced by the defendant to sustain her contention that during all the years of plaintiff's association with his father he was only an employee. We conclude, after a careful reading of the voluminous record, that the position taken by defendant is not sustained by the record, and that plaintiff became a partner with his father in May, 1920, and that the partnership continued until the death of Mr. Eggleston.

With reference to plaintiff's appeal there is evidence that T. F. Eggleston named the defendant as a partner in the Guarantee Construction Company in a financial statement and in an application for a contract bond. She testified that she paid money into the partnership and it appears that she played a minor role in the management of the business.

We are of the opinion that each of the partners has failed to exclude the other from an interest in the partnership and concur in the conclusion reached by the trial court that the partnership consisted of the father, wife and son, each owning an undivided one-third interest.

II. One of the defenses interposed by defendant is that plaintiff is estopped from maintaining this action by his conduct and by the probate proceedings.

The conduct complained of is that plaintiff did not file a claim in the estate for any of the property of decedent but acquiesced in the closing of the estate and the /approval of the final report. Defendant listed plaintiff as an heir in the probate proceedings and he waived notice of the final report.

The defendant makes the following statement in her argument:

"If Harry had been the surviving partner, it would have been his right and duty to take possession of the partnership assets and handle and dispose of the same after the death of his father. He made no attempt to do this, but permitted his mother, as administratrix, to take possession of everything as the individual property of his father, and later to dispose of the same as the individual property of 'Estalenia H. Eggleston. He assisted his mother in operating this business, and in selling this property as her own."

The real basis of the defense of estoppel is that because of the conduct of the plaintiff, defendant was led to believe that plaintiff considered himself merely a servant of his father and claimed no interest as a partner.

We are of the opinion that defendant has failed to establish her defense of estoppel. She was the sole beneficiary of her husband's estate under his will. Plaintiff did not claim an interest in his father's estate as heir; he did not question the validity of the will nor was his father indebted to him personally in any way. Plaintiff had no claim to file against the estate. At the time of the death of his father he considered himself a partner, and, in fact, was a partner. As stated later in this opinion, he did not know that defendant claimed to be a partner with her husband until 1933, seven years after closing of the estate.

After the death of Mr. Eggleston, plaintiff and defendant remained in possession of the property and carried on the business. Instead of dissolving the partnership, the plaintiff continued the partnership with his mother who had received her husband's interest in the partnership under the will and continued his active management of the construction company and also the lumber yard until it was sold in 1926.

Plaintiff testified that he negotiated the sale of the lumber yard and when defendant executed the conveyance of the prop-

erty and received all the proceeds she agreed to use the proceeds for the benefit of the partnership and as required by plaintiff in the operation of the business of the construction company. Defendant denied all of this testimony and claims to have been the sole owner of the lumber yard at the time of the sale.

In 1926, and prior to closing the estate, defendant and her attorneys were in possession of Exhibit "C-1" which is an application for a contract bond executed by Mr. Eggleston on behalf of the Guarantee Construction Company in which he named the defendant and plaintiff as copartners. This is one of the exhibits that defendant relies on to establish her interest in the partnership. The defendant must have known through her close association with her husband and son of the substantial control that plaintiff exercised over the partnership affairs and property prior to the death of Mr. Eggleston, a control clearly established by the record to have been far more extensive than that exercised by a mere employee.

We are of the opinion that defendant cannot have reasonably thought at the time she closed the estate that plaintiff's status with his father was that of a servant working for wages. Assuming, however, that she did believe at all times that plaintiff was not a partner, we find in the record no conduct or statements of the plaintiff that could have reasonably induced that belief.

Defendant's testimony that after the death of Mr. Eggleston plaintiff permitted her to take absolute possession of all of the property as her own is not sustained by the record.

We conclude that during the long, close business relationship between plaintiff and defendant that there was nothing in the conduct of the plaintiff that could have reasonably lead defendant to believe that he considered himself an employee only and not a partner with his father and that she was the absolute owner of all the property from the date of her husband's death.

Plaintiff was not a party to the probate proceedings as a partner and the final order in probate did not adjudicate plaintiff's rights in the partnership property. The probate court administered only the property owned by Mr. Eggleston at the time of his death.

III. Defendant also claims that plaintiff's action is barred by the statute of limitations and laches. To sustain this defense, defendant refers to plaintiff's testimony that in 1926

she told him that "he did not have anything coming", and contends that plaintiff's cause of action accrued at that time because this statement clearly informed him that she did not and never had considered him a partner.

The testimony of the plaintiff that defendant relies on is that when the lumber yard was sold in 1926 for $49,000 the defendant kept possession of the money and agreed to use it when needed by the plaintiff in the construction business and when he asked her for funds for that purpose "she told me I had everything coming to me. You can have the accounts that are delinquent that hasn't been paid to around $2,400, because if you don't give them credit *we* would have to take the loss". Italics supplied. This statement, under all the circumstances, was not a direct repudiation of plaintiff as a partner and he could reasonably have inferred from the statement that defendant recognized him as a partner.

In 1933, plaintiff first discovered in the records of the bank Exhibit "A" which was the financial statement executed by his father in 1920 naming him as sole copartner. A short time later he located Exhibit "C-1" in the files of the attorneys for his mother as executrix which named him and his mother as copartners with Mr. Eggleston. Plaintiff testified that he showed these exhibits to his mother and she stated to him that they didn't mean anything; that he never was a partner and she was the only partner her husband ever had.

We find that plaintiff did not know until 1933 that defendant did not consider him a partner and was claiming to be the absolute owner of all the property. Plaintiff's cause of action accrued when he was advised of the attitude of his mother and he then immediately commenced this action to dissolve the partnership and for an accounting. This action was not barred by the statute of limitations nor was plaintiff guilty of laches.

IV. Another error urged by defendant is that the court erred in overruling her motion to vacate the decree and dismiss the action.

When the May 1936 term of court convened, this case had been pending for more than two years and on May 20, 1936, this cause, with other cases, was dismissed by an order signed by the clerk of the court which recites the cases were dismissed under Division No. 1 of the Rules of Practice of the District Court of Woodbury County. Plaintiff, at the same term, filed

an application for reinstatement of the action stating that the case was dismissed for want of prosecution under the rules of the court and that it had been assigned for trial by the plaintiff and that the trial had been delayed solely because of the illness of counsel for the defendant; that the cause had been noted for trial at the March, 1936 term by plaintiff but could not be tried because of the absence of defendant's attorneys from the state. The application also stated that neither plaintiff nor his attorneys received any notice that the action was assigned for dismissal.

On June 24, 1936, Judge Rice found the statements contained in the petition for reinstatement to be true, sustained the motion and reinstated the case.

The motion of the defendant to vacate the decree and dismiss the action recites that she had no notice of the filing of the petition to reinstate the action and by reason thereof the court was without jurisdiction to make the order.

The plaintiff filed a resistance to the application stating that the cause was repeatedly assigned for trial and that the delay was entirely due to the defendant; that the clerk was in error under the rules because the case had been continued and was assigned for trial at the May, 1936 term and that notice to defendant was not necessary. The application to vacate the decree and dismiss the action was overruled. The trial court, who had previously ordered the reinstatement of the cause, in overruling the motion to vacate the decree, must have found that the facts stated in the resistance were true and that the rules of practice did not provide for a dismissal of the case under the circumstances shown by the record. In holding that the clerk acted erroneously, in dismissing the cause, Judge Rice, in reinstating the case, and in overruling the motion to dismiss, was obviously interpreting the court rules of practice. The rules were not introduced in evidence. We are not advised of the record circumstances which will permit a dismissal under the rules of court nor of the provisions of the rules in regard to the notice required prior to the dismissal of a case for want of prosecution, or where an application for reinstatement has been filed.

The trial court was advised when he overruled the motion to vacate the decree that no notice of the proceedings to reinstate the action was served on the defendant and was familiar with the condition of the record and the requirements of the rules.

We cannot assume that the court did not have jurisdiction to reinstate the case without notice to the defendant. The case is affirmed.—Affirmed.

SAGER, C. J., and HAMILTON, KINTZINGER, and DONEGAN, JJ., concur.